*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARI MUCCIARIELLO, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 18-14444 (FLW) |
| | : **OPINION** |
| VIATOR, INC., TRIPADVISOR, LLC, *et al.*, | : |
| Defendants. | : |

**WOLFSON, Chief Judge:**

Plaintiff Kari Mucciariello ("Plaintiff") filed this action against Viator, Inc. and Tripadvisor, LLC ("Defendants"), online tour companies, alleging that Defendants (1) breached their fiduciary duties to Plaintiff, (2) were negligent in their vetting of Playa Uvas, a third-party Mexican tour guide company, and (3) violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1. In the instant matter, Defendants move to dismiss the Complaint pursuant to the doctrine of forum non conveniens or, in the alternative, to transfer this action to the United States District Court for the District of Massachusetts, pursuant to the forum selection clause in the Viator Website Terms, Conditions and Notices ("Terms and Conditions"). In addition, Defendants move for an award of attorney's fees and costs pursuant to Federal Rule of Civil Procedure 11, as a result of Plaintiff's filing of this suit in this forum. For the reasons set forth below, Defendants' Motion to dismiss and Motion for sanctions are **DENIED**, and the Motion to transfer this action to the U.S. District Court for the District of Massachusetts is **GRANTED**.

1

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2014, TripAdvisor, a corporation with its principal place of business in Newton, Massachusetts, acquired Viator, which maintains its principal place of business in San Francisco, California. Complaint ("Compl."), ¶¶ 2-4. Defendants jointly manage an online "travel and tour service" on which consumers can choose from a "diverse selection of worldwide tours and activities" that are hosted on Viator's website, and operated by "pre-screened" third-party providers. *Id*. at ¶¶ 7-8, 10.

On April 24, 2017, Plaintiff booked an "ATV Seashore Combo: Adventure to Mezcalitos plus Optional Snorkeling at Playa Uvas" through Viator's website, described as a tour of a "scenic beach" that would take place in a "small group, with personal attention from Playa Uvas guides[.]" *Id*. at ¶¶ 11, 13. To purchase the tour, Plaintiff was required to click on a "Book Now" icon, directly under which the following message was located: "[b]y clicking Book Now and making a reservation, I acknowledge that I have read and agree to be bound by Viator's Terms and Conditions and Privacy Statement." Supplemental Declaration of Tyler Young (dated March 25, 2019) ("Young Dec."), ¶ 2, Exhibit A.[1] The phrase "Viator's Terms and Conditions" appeared in blue underlined text, in the form of a hyperlink, which directed the consumer to the website's

---

[1]     In deciding a motion to dismiss, courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996)). Therefore, in resolving the instant motion, the Court may consider Defendants' declarations and exhibits, because they directly relate to Viator's website, which is referenced in, and, indeed, integral to, Plaintiff's Complaint.

Terms and Conditions. *Id*. Viator's Terms and Conditions include a forum selection clause, which, in relevant part, provides:

> [T]his agreement is governed by the laws of the Commonwealth of Massachusetts, USA. You hereby consent to the exclusive jurisdiction and venue of courts in Boston, Massachusetts, USA and stipulate to the fairness and convenience of proceedings in such courts for all disputes arising out of or relating to the use of this Website. You agree that all claims you may have against Viator, Inc. arising from or relating to this Website must be heard and resolved in a court of competent subject matter jurisdiction located in Boston, Massachusetts.

Declaration of Tyler Young (dated February 11, 2019) ¶ 2, Exhibit A.

On May 3, 2017, the date of her ATV tour, Plaintiff alleges that she was guided in a "large group" through "dangerous, treacherous and uneven terrain," rather than the "scenic and level beach" which was described on Viator's website. Compl., at ¶¶ 17-18, 21. As a result, Plaintiff alleges that she fell from her ATV and sustained "serious and permanent injuries to her wrist[.]" *Id*. at ¶¶ 22-23. On September 28, 2018, notwithstanding the forum selection clause, Plaintiff filed this action against Defendants in the District of New Jersey. The Complaint asserts claims for breach of fiduciary duty, negligence, and violations of the NJCFA.

In the instant matter, Defendants move to dismiss the Complaint or, in the alternative, to transfer this matter to the U.S. Court for the District of Massachusetts pursuant to the forum selection clause in the Terms and Conditions. However, Plaintiff argues that she could not have assented to the Terms and Conditions, because she was not provided with reasonable notice of their existence. Therefore, according to Plaintiff, the forum selection clause is not enforceable, and her claims need not be litigated in Massachusetts.

**II.     STANDARD OF REVIEW**

3

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). As the Supreme Court has instructed, "the appropriate way [for a district court] to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

Importantly, under the doctrine of forum non conveniens, litigation outside of a contractually selected forum shall only be permitted in the "the most exceptional cases." *Id*. at 581 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). Indeed, forum selection clauses, which are strictly enforced, are entitled to great weight and are presumptively valid and enforceable. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-11 (1972)).

In order to avoid the enforcement of a forum selection clause, the opposing party must establish: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). However, in attempting to make the requisite showing, the opposing party bears "a heavy burden of proof." *Bremen*, 407 U.S at 17.

## III. ANALYSIS

### A. The Forum Selection Clause

Here, as a preliminary matter, the forum selection clause, or any of the Viator Terms and Conditions, are not referenced in the Complaint. Rather, the allegations, as they appear to suggest,

4

indicate that Plaintiff entered into a valid and binding agreement with Viator. Nonetheless, without raising a direct challenge to the forum selection clause, in her motion papers, Plaintiff argues that Viator's Terms and Conditions cannot be enforceable, because she was not provided with reasonable notice. Plaintiff's Opposition ("Pl.'s Opp."), at 16-25. Plaintiff's arguments, therefore, turn on the sole issue whether she agreed to be bound by the Terms and Conditions on Viator's website.

In determining whether Plaintiff is bound by the forum selection clause in Viator's Terms and Conditions, the Court is guided by "fundamental precepts of contract law." *Hoffman v. Supplements Togo Management, LLC*, 419 N.J. Super. 596, 606 (App. Div. 2011). More specifically, under New Jersey law, "[a] contract term is generally binding if the contract has been mutually agreed upon by the parties, is supported by valid consideration, and does not violate codified standards or offend public policy." *Id*. (citing W. *Caldwell v. Caldwell*, 26 N.J. 9, 24-26 (1958)). The element of mutual assent will not exist, however, unless the parties have reached a meeting of the minds, and have "been fairly informed of the contract's terms before entering into the agreement." *Id*. (citing *Pop's Cones, Inc. v. Resorts Int'l Hotel*, 307 N.J. Super. 461, 467-68 (App. Div.1998)).

Significantly, these contractual principles are equally applicable in the context of online agreements, which are generally presented in one of two forms: clickwrap agreements and browsewrap agreements. *Hoffman*, 419 N.J. Super. at 611; *James v. Global Tel\*Link Corp.*, No. 13-4989, 2016 U.S. Dist. LEXIS 17099, at \*14 (D.N.J. Feb. 11, 2016) (noting that, New Jersey courts, both state and federal, have applied ordinary principles of contract formation to assess the enforceability of online contracts) (citations omitted). "A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog

box on the screen in order to proceed with the internet transaction." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (citations omitted); *Hoffman*, 419 N.J. Super. at 610. On the other hand, with browsewrap agreements, "a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen." *Global Tel\*Link Corp.*, 852 F.3d at 267. Unlike clickwrap agreements, "where users must click on an acceptance after being presented with terms and conditions . . . browsewrap agreements do not require users to expressly manifest assent." *Id*.

While clickwrap agreements are routinely upheld, browsewrap agreements are not automatically deemed valid. Rather, as the Third Circuit has explained, "[t]here is an evolving body of caselaw regarding whether the terms and conditions in browsewrap agreements are enforceable, often turning on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage." *Id.* (citations omitted); *Hoffman*, 419 N.J. Super. at 608, 611 (assessing the enforceability of a forum selection clause in an internet website on the basis of "fundamental standards of reasonable notice," which involves examining "the style or mode of presentation, or the placement of the provision"). In that regard, "[w]hen terms are linked in obscure sections of a webpage that users are unlikely to see, courts have refused to find constructive notice." *Global Tel\*Link Corp.*, 852 F.3d at 267 (citations omitted). Conversely, "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." *Id*. (quotation and citation omitted). At bottom, regardless of its characterization, the pertinent inquiry is whether the user was provided with reasonable notice of the applicable terms, based on the design and layout of the website.

Here, Plaintiff contends that the Terms and Conditions amount to an "invalid browsewrap agreement," because she neither received "reasonable notice of their existence," nor provided "an unambiguous manifestation of assent." Pl.'s Opp., at 23. Primarily relying upon the Second Circuit's non-binding decision in *Specht v. Netscape Commc'ns Corp.*, Plaintiff argues that she is not bound by the Terms and Conditions, because Viator's website "is designed so that a user can use its services without affirmatively assenting to the webpage's terms of use." *Id*. at 23. According to Plaintiff, she was ultimately permitted to purchase the ATV Tour "without ever being asked to check a box or click an 'I Agree' button, or even acknowledge that the Terms exist." *Id*. at 24-25. Without proper notice, Plaintiff maintains that enforcing the forum selection is not appropriate. I disagree.

As a preliminary matter, I find that Plaintiff's reliance on *Specht* is misplaced. In that case, the defendant sought to enforce an arbitration clause that was contained in a hyperlink to a software license agreement on its website. The license agreement, however, was hidden "at the very bottom of" a webpage, beneath an icon which prompted the user to "Download Now!" *Specht*, 306 F.3d at 31. Indeed, it was inconspicuously located in a "submerged" portion of the webpage, which required the user to scroll down onto the "next screen," within a sentence that read: "[p]lease review and agree to the terms of the Netscape SmartDownload software license agreement before downloading and using the software." *Id*. at 23. If the user clicked on the hyperlinked agreement, an additional window would appear, entitled "License & Support Agreements." *Id*. at 23-24. On that webpage, only, was the user finally informed that consent to the applicable license terms was required in order to download a product, and the terms would then be displayed if the user clicked, once again, on an additional hyperlink. *Id*. The Second Circuit, in finding that the terms were not

enforceable, reasoned that "[w]e are not persuaded that a reasonably prudent [person] in these circumstances would have known of the existence of license terms." *Id.* at 31.

Unlike *Specht*, Plaintiff, here, was provided with reasonable notice of the hyperlinked Terms and Conditions. On the checkout page of Viator's website, Plaintiff was required to provide her personal and billing information, before clicking on the "Book Now" icon to confirm her purchase of the ATV Tour. Significantly, the following message was conspicuously displayed directly underneath the "Book Now" icon: "[b]y clicking Book Now and making a reservation, I acknowledge that I have read and agree to be bound by Viator's Terms and Conditions and Privacy Statement." Young Dec., ¶ 2, Ex. A. In addition, because the Terms and Conditions were highlighted in blue, in contrast to the surrounding black text, that language clearly appeared as a hyperlink that immediately directed the user to Viator's Terms and Conditions, wherein the forum selection clause was placed.

*Specht* is distinguishable based on the conspicuous placement of the hyperlinked Terms and Conditions on Viator's website, in relation to the icon which Plaintiff was required to click in order to effectuate her purchase of the ATV Tour. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. Jan. 24, 2012) (distinguishing *Specht* in a case where the defendant's website included a "Sign-Up" button, "immediately below" which the website's hyperlinked terms appeared). In addition, the statement which accompanied the hyperlink explicitly informed Plaintiff that, by clicking on the "Book Now" icon, she was assenting to Viator's Terms and Conditions. Plaintiff was not required to visit another webpage, in order to understand that a binding contract was created upon confirming her purchase of the ATV Tour, nor did she have to click on multiple hyperlinks, before accessing the forum selection clause in Viator's Terms and

8

Conditions. Thus, unlike the defendant in *Specht*, Defendants, here, provided reasonable notice of their Terms and Conditions.

Nonetheless, Plaintiff and Phillip Portantino, Esq., her attorney, have each submitted separate certifications to refute that she was provided with reasonable notice of Viator's Terms and Conditions. More specifically, in her certification, Plaintiff states that she visited Viator's website, and that she does not "recall ever seeing reference to 'Terms and Conditions' while using the Website," or "language on the Website that stated [her] use of the Website or purchase of [a product] subjected [her] to Terms and Conditions. Declaration of Kari Mucciariello (dated April 1, 2019), ¶¶ 2-3.

However, Plaintiff cannot submit her own certification on a motion to dismiss. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings"). Nevertheless, even if I were to consider her Certification, that will not change the outcome on this motion. Indeed, the relevant inquiry, here, is not whether Plaintiff actually reviewed the Terms and Conditions, as the Court must, instead, examine whether "the specifics surrounding [the] agreement revealed either that the user knew or should have known about the existence of the terms and conditions that contained the forum selection clause." *Liberty Syndicates* at *Lloyd's v. Walnut Advisory Corp.*, No. 09-1343, 2011 U.S. Dist. LEXIS 132172, at *14 (D.N.J. Nov. 16, 2011). As such, because Plaintiff was provided with reasonable notice, her failure to click on the hyperlink to review the Terms and Conditions does not suffice to invalidate the forum selection clause.

In the Certification of counsel, Mr. Portantino documents his own experience while purchasing the "Operation City Quest Scavenger Hunt" activity on Viator's website, and includes screenshotted webpages that he took during different stages of the booking process. Declaration

of Counsel (dated April 1, 2019), ("Counsel Dec."), ¶ 2. As a preliminary matter, I note that Mr. Portantino's submissions are inappropriately provided to the Court, as Plaintiff's counsel cannot act as a fact witness, nor can he submit factual evidence to support Plaintiff's claims at the dismissal stage of litigation. Even more damming, the screenshots depict Viator's website as it appeared on March 8, 2019, significantly after the date on which Plaintiff booked the ATV Tour, *i.e.*, April 24, 2017. As such, those screenshots are not relevant to the Court's analysis on this motion.

While I need not consider Mr. Portantino's Certification and the exhibits attached, they, nevertheless, do not show that Defendants failed to provide reasonable notice of the Terms and Conditions. Counsel provides, among other things, three different screenshots[2] which were taken as he "incrementally scroll[ed] down" through the checkout page, including one in which he was able to configure the screen, so that the "Book Now" icon was visible, without the hyperlinked Terms and Conditions, which are placed directly below, displayed on the webpage. Counsel Dec., ¶ 6. Relying on those screenshots, Plaintiff argues that a user can click the "Book Now" icon to confirm a purchase, "without the language underneath the button appearing in [the] internet browsing window," such that the hyperlinked Terms and Conditions are not located in a conspicuous position. *Id.*, ¶ 13.

To the extent that Plaintiff contends that the Terms and Conditions should be deemed invalid, merely because she was required to scroll down in order for the hyperlink to appear, this

---

[2] Defendants have provided a screenshot of the webpage that Plaintiff then reviewed in 2017, when she purchased the ATV Tour. The parties' versions bear some differences, as Defendant's screenshot appears to show the "Book Now" icon and the statement advising assent on a single page. Importantly, despite these differences, the placement of the hyperlink, in each version, is the same—directly underneath the Book Now icon, within language indicating that, by clicking, the user is agreeing to be bound by Viator's Terms and Conditions.

position is specious. Plaintiff does not cite case law, nor has the Court independently found legal authority, in support of this proposition. Rather, online agreements, similar to the one here, have been found to be enforceable under New Jersey law, when the pertinent terms and provisions are hyperlinked, and the user must perform an action to provide assent, such as, for example, clicking on a button. *Beture v. Samsun Electronic Elecs. Am., Inc.*, No. 17-5757, 2018 U.S. Dist. LEXIS 121801, at *16 (D.N.J. July 18, 2018) ("[M]odified browsewrap agreements are valid and enforceable under New Jersey law."); *Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, No. 14-6115, 2015 U.S. Dist. LEXIS 94556, at *6 (D.N.J. July 21, 2015).

In other words, hyperlinked terms, such as the one in this case, amount to an enforceable agreement when "reasonable notice" is provided and a button is designated to manifest assent, near a statement informing the user that, by clicking, he or she is agreeing to be bound by the hyperlinked terms. *See, e.g., Fteja*, 841 F. Supp. at 835 (reasonable notice where users of a social networking website clicked a "Sign Up" button immediately above a sentence that read "[b]y clicking Sign Up, you are indicating that you have read and agree to the [hyperlinked] Terms of Service."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (enforcing online agreement where users clicked on an "allow" button, directly underneath which was a statement in "smaller grey font," indicating that clicking on the button constituted acceptance of the blue hyperlinked "terms of service"); *Snap-On Bus. Solutions Inc. v. O'Neil & Assocs.*, 708 F. Supp. 2d 669, 682-83 (N.D. Ohio 2010) (finding sufficient notice, where the user "clicked on an 'Enter button' to proceed," underneath which the webpage stated: "[t]he use of . . . this site is subject to the terms and conditions," which were viewable in "a green box with an arrow that users must click . . . ."); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-4570, 2017 U.S. Dist. LEXIS 192814, at *13 (S.D.N.Y. Nov. 20, 2017) (upholding an online agreement where the user

11

had to "click on a 'Submit Order' button with the language '[b]y making this purchase you are agreeing to out Terms of Use and Privacy Policy' immediately below it in order to complete her purchase."), *R&R adopted*, 2018 U.S. Dist. Lexis 15812 (S.D.N.Y. Jan. 31, 2018); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-4263, 2013 U.S. Dist. LEXIS 136003, at *24 (E.D.N.Y. 2013) (finding a binding online agreement, were the defendant's reference to the hyperlinked terms were near an "activation button," and an accompanying statement which read, "[b]y clicking and making a request to Activate, you agree to the [hyperlinked] terms and conditions."); *Major v. McCallister*, 302 S.W.3d 227, 230, 2009 (Mo. App. 2009) (finding sufficient notice, where the defendant's website included a statement which read, "'[b]y submitting you agree to the Terms of Use' and a blue hyperlink—right next to the button that Appellant pushed.").[3]

Here, the hyperlinked terms on Viator's website adhere to the requirements of reasonable notice. Regardless of whether Plaintiff was required to scroll through the Check Out page, the hyperlinked Terms and Conditions, as stated, were conspicuously placed directly underneath the "Book Now" icon. Based on its location, therefore, the hyperlink was not hidden in an area of the screen that Plaintiff was unlikely to notice, but, instead, it was clearly displayed in a section of the

---

[3] The Court notes that, in cases where browsewrap agreements have been deemed invalid, the websites in question either failed to include a statement informing the user that, by clicking on a button, he or she was agreeing to be bound by hyperlinked terms, or the hyperlinked terms were inconspicuously on the screen. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (refusing to enforce hyperlinked terms, where the defendant's website did not include text informing the user that, by clicking on a button, he or she was providing consent); *Holdbrook Pediatric Dental, LLC v. Pro Computer Serv.*, No. 14-6115, LLC, 2015 U.S. Dist. LEXIS 94556, *16 (D.N.J. July 21, 2015) (holding that hyperlinked terms were invalid, because the hyperlink was placed in "isolation," with "no statement that signing the agreement indicated acceptance of the" terms and conditions.); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (finding insufficient notice where the hyperlinked terms were inconspicuously located at the bottom of a webpage, which did not include a statement advising assent). Significantly, unlike those cases, Viator's checkout page included a statement of notice, within close proximity to the "Book Now" icon.

webpage that she needed to review in order to effectuate her purchase of the ATV Tour. Stated differently, the hyperlink was placed within the immediate proximity of an icon that Plaintiff was required to click, for the purpose of confirming her purchase on Viator's website. Crucially, counsel's screenshot was taken with the benefit of hindsight, and, although it reveals that it is possible to purchase a product without viewing the Terms and Conditions, such a result is improbable. Indeed, users, unlike counsel, are not attempting to willfully evade the hyperlinked Terms and Conditions on Viator's checkout page, nor manipulate their web browser so that the "Book Now" icon is displayed, without the hyperlinked Terms and Conditions underneath. Indeed, that a user would purposefully stop the web browser, at the precise point at which the "Book Now" icon ends, defies logic.

Finally, Plaintiff argues that she could not have assented to Viator's Terms and Provisions, even though she clicked on the "Book Now" icon, because the statement, displayed underneath, was in small "light-grey font." Pl.'s Opp., at 24. However, the screenshot's picture quality, which she provides for support, is poor and barely legible, and, more importantly, her contentions are in conflict with the checkout page of Viator's website, as it appeared in 2017, when Plaintiff viewed the webpage. Indeed, at that time, the blue hyperlinked Terms and Conditions were displayed over a white background, whereas the accompanying language, which informed Plaintiff that she was consenting to the Terms and Conditions by clicking on the "Book Now" icon, were in black. Accordingly, I find that the hyperlink and accompanying language are displayed in a manner which complies with the requirements of reasonable notice. *See, e.g.*, *Fteja*, 841 F. Supp. at 840 ("[A] person using a computer quickly learns that more information is available by clicking on a blue hyperlink.") (quotations and citation omitted); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal., 2015) (finding that, although the text of the notice of assent was "somewhat

smaller," because the hyperlinked terms and agreement were "set off in blue-colored font," reasonable notice was given).

In sum, based on the design of Viator's website, I find that the forum selection clause requiring suit to be filed in Massachusetts is binding on Plaintiff, as she had reasonable notice of those terms by clicking on the "Book Now" icon.

**B.     § 1404(a) Transfer**

Having determined that the Terms and Conditions are binding, the Court proceeds to weigh the transfer factors enumerated in § 1404(a). *Salovaara v. Jackson Nat'l Life Ins*. Co., 246 F.3d 289 (3d Cir. 2001) ("[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss. And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause)").

In *Atlantic Marine*, the Supreme Court clarified the § 1404(a) analysis in the context of a forum selection clause:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice. The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.

*Atl. Marine Constr. Co.*, 571 U.S. at 62-63. More specifically, the calculus changes in three ways. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. "Second, a court evaluating a defendant's § 1404(a)

motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id*. at 582. Lastly, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id*.

Excluding Plaintiff's choice of forum and concentrating only on the public interest factors, in accordance with the Supreme Court's instructions in *Atlantic Marine*, the Court evaluates:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879. Other public factors include, but are not limited to, "the unfairness of burdening citizens in an unrelated forum with jury duty." *Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 192 (3d Cir. 2008) (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1946)). "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 300 (3d Cir. 2010) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528. Here, Plaintiff does not dispute that the public interest factors, on balance, weigh in favor of transfer to the District of Massachusetts.[4]

---

[4] The Court notes that the forum selection clause requires suit to be filed within "the exclusive jurisdiction and venue of courts in Boston, Massachusetts," without distinguishing between state and federal forums. Nonetheless, on this motion, Defendants request to transfer this action to the U.S. Court for the District of Massachusetts, which Plaintiff has not contested. Therefore, transferring this action to the District of Massachusetts, Boston Vicinage, is appropriate.

As to the first public interest factor, Viator's parent company, TripAdvisor, is located in Massachusetts. Therefore, this factor weighs in favor of transfer, as a district court within that forum may possess the ability to enforce a judgment with greater ease than this Court. *Yacovella v. Apparel Imps., Inc.*, No. 14-5484, 2015 U.S. Dist. LEXIS 115291, at *26 (D.N.J. Aug. 31, 2015) ("Defendants are all located in Florida, and therefore, a Florida court can enforce a judgment against Defendants with greater ease than this Court."). Similarly, because TripAdvisor operates from Massachusetts, the practical considerations also weigh in favor of transferring this action, because the applicable evidence and trial witnesses may be more easily accessible in the District of Massachusetts. *Metro. Life Ins. Co. v. Bank One, N.A.*, No.'s 03-1882, 03-2784, 2012 U.S. Dist. LEXIS 137119, at *21 (D.N.J. Sept. 25, 2012) (explaining that "practical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive.").

As to the third public interest factor, according to the most recent statistics, the District of New Jersey has 32,982 total filings spread over 17 judgeships, for an average of 1940 filings per judge, whereas the District of Massachusetts has 5,181 total filings spread over 13 judgeships, for an average of 399 filings per judge. *See* U.S. Courts, "Civil Statistical Tables For The Federal Judiciary (September 21, 2019)," https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2018/12/31. The third public interest factor, therefore, also weighs in favor of transfer.

As to the fourth public interest factor, Massachusetts has "a compelling interest in adjudicating this controversy and regulating the conduct of its corporations," including TripAdvisor, a local corporation. *Metro. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 137119, at *22-23; *HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, No. 07-4390, 2009 U.S. Dist. LEXIS 74265, at *12 (D.N.J. Aug. 21, 2009) ("A state has a compelling interest in regulating its businesses or in

litigating matters that arise from action occurring within its jurisdiction"). Moreover, although Plaintiff is a New Jersey resident, the conduct of which she complains occurred outside of this state, as she sustained her alleged injuries in Mexico, while participating in an ATV Tour that was conducted by local guides. The fourth public interest factor, therefore, weighs in favor of transfer.

As to the fifth public interest factor, both Massachusetts and New Jersey have policies that favor the enforcement of forum selection clauses. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017) ("[I]n most cases, district courts must enforce valid forum-selection clauses when adjudicating § 1404(a) transfer motions[.]"); *Melia v. Zenhire, Inc.*, 462 Mass. 164, 182 (2012) ("Massachusetts courts enforce forum selection clauses so long as they are fair and reasonable."). And, as to the last factor, while the familiarity of the forum with the applicable law is a consideration, district courts are "regularly called upon to interpret the laws of jurisdictions outside of the state in which they sit." *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008). Therefore, the fifth and sixth public interest factors are both neutral.

In conclusion, having weighed all of the public interest factors under § 1404(a), the Court finds that, on balance, transferring this action to the U.S. District Court of Massachusetts is appropriate.[5]

### C. Rule 11 Sanctions

Finally, Defendants seek an award of attorney's fees and costs for having filed the instant motion to transfer, pursuant to this Court's inherent authority under Federal Rule of Civil Procedure 11. According to Defendants, sanctions are warranted because Plaintiff's counsel "refused to withdraw this lawsuit and re-file in the proper Massachusetts forum," despite his

---

[5] Because the public interest factors under § 1404(a), on balance, weigh in favor of transferring this action to the U.S. District of Massachusetts, I need not address Defendants' remaining arguments on this motion.

knowledge of the binding forum selection clause in the Terms and Conditions. I, however, disagree.

Rule 11 allows for "the imposition of sanctions when a motion [or claim] is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002); *Spring Creek Holding Co., Inc. v. Keith*, No. 02-376, 2006 U.S. Dist. LEXIS 68145, at *12 (D.N.J. 2006) (citation omitted). Rule 11 sanctions are based on "an objective standard of reasonableness under the circumstances." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (quoting *Landon v. Hunt*, 938 F.2d 450, 453 n.3 (3d Cir.1991)). The imposition of Rule 11 sanctions are reserved for only exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous. *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991) (citation omitted). Therefore, in considering a motion to impose sanctions under Rule 11, the Court must determine that (1) the claims are objectively frivolous, and (2) the person who signed the pleadings or other papers should have been aware that they were frivolous. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

Here, Plaintiff argued that the forum selection clause was unenforceable, because Defendants failed to provide her with reasonable notice of Viator's Terms and Conditions. Although the Court ultimately disagreed, Plaintiff's position was at least defensible. As such, Plaintiff's decision to pursue this suit in New Jersey, despite Defendants' having notified her regarding the forum selection clause in Viator's Terms and Conditions, was not patently unmeritorious or frivolous. Thus, I do not find that the imposition of sanctions are warranted, on the basis of Plaintiff's failure to withdraw this action against Defendants. *Goldenberg v. Indel, Inc.*, No. 09-5202, 2011 U.S. Dist. LEXIS 31851, at *5 (D.N.J. Mar. 25, 2011) (explaining that,

18

"[s]anctions are imposed only in those rare instances where the evident frivolousness of a claim or motion amounts to an 'abuse[] of the legal system.'") (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss and Motion for sanctions are **DENIED**, and the Motion to transfer this action to the U.S. District Court for the District of Massachusetts is **GRANTED**.

Dated: September 27, 2019

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge